# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hatem Saied,                :
            Petitioner      :
               :
        v.             :   No. 426 C.D. 2020
               :   Submitted: February 5, 2021
Workers' Compensation Appeal    :
Board (Menzies Aviation Group    :
(USA), Inc.),             :
           Respondent    :


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
              **HONORABLE ANNE E. COVEY,** Judge
              **HONORABLE ELLEN CEISLER,** Judge

**<u>OPINION NOT REPORTED</u>**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: May 26, 2021**


Hatem Saied (Claimant), pro se, petitions for review of the March 3, 2020 Order of the Workers' Compensation Appeal Board (Board), affirming the January 9, 2019 Decision and Order of the Workers' Compensation Judge (WCJ), which found that Claimant had suffered a work-related injury and disability while working for Menzies Aviation Group (USA), Inc. (Employer). The WCJ found that Claimant sustained a lumbar strain and sprain from which Claimant had fully recovered and, on that basis, granted Claimant's Claim Petition for the closed period of April 20, 2018, to August 7, 2018. On appeal, Claimant raises the following issues: (1) the WCJ erred in granting benefits only for a closed period ending on August 7, 2018, and in not granting him benefits as of April 19, 2018; (2) his previous counsel's

(Counsel) ineffective assistance prejudiced his case; (3) the WCJ erred in ordering Claimant to use a translator where Claimant asked not to do so, and the transcript reflecting this hearing should be reopened to reflect this interaction; and (4) Employer's counsel failed to serve him in the underlying litigation. After review, we affirm.

## I.  BACKGROUND

On May 31, 2018, Claimant, through Counsel, filed the Claim Petition alleging that, on April 17, 2018, while in the course of his employment as a fuel farm operator, he felt a sharp pain in his lower back when he was adjusting and sealing a valve and changing a nozzle on a fuel hose.  (WCJ Decision, Finding of Fact (FOF) ¶ 1; Claim Petition, Certified Record (C.R.), Item 2.)  Claimant sought full disability from April 20, 2018, ongoing and payment for medical bills.  (C.R., Item 2.) Employer filed an answer denying the Claim Petition's material allegations.  (*Id.*, Item 4.)

The matter was assigned to the WCJ for disposition.  Claimant testified before the WCJ on June 21, 2018, through a translator, whom Claimant now argues he did not want and the WCJ ignored his request not to use the translator.[1]  Claimant also presented the August 15, 2018 deposition testimony of Dennis Ivill, M.D.  Employer presented the medical report and testimony of John Perry, M.D., who performed an Independent Medical Examination (IME) of Claimant at Employer's request.

---

[1] Claimant's Counsel and Employer's counsel stipulated to the translator's qualifications.

2

*A. Claimant's Evidence*

In support of his Claim Petition, Claimant testified as follows.[2] On April 17, 2018, Claimant, while working as a fuel farm operator, performed maintenance, fixed a nozzle on a hose, and lifted hoses weighing about 50 pounds. While Claimant had a hose between his legs and was pushing and putting a nozzle on the hose, he "felt a sharp spike in his right hip and at the end of his spine." (FOF ¶ 4b.) Claimant notified Employer of this alleged work injury on that same day. Claimant worked the following day on April 18, 2018, which was the last day he performed work, and then informed Employer that he was unable to continue working due to the injury. He did not resign. After requesting a list of doctors from Employer and not receiving one, Claimant obtained treatment as follows: in the Emergency Room of the Springfield Hospital (Emergency Room) on April 20, 2018; from Healthplex Sports Medicine (Healthplex) on April 30, 2018, and Chester Community Physical Therapy; and with Dr. Ivill and chiropractor Marc Persson. Claimant feels "a little pain down the sides of his legs[,]" though he testified at the hearing that the pain does not go into his toes. (*Id.* ¶ 4e.)

Dr. Ivill testified that he is board certified in physical medicine and rehabilitation.[3] Dr. Ivill treated Claimant on 14 occasions starting on May 30, 2018, reviewed Claimant's medical records, and took a history from Claimant about the alleged work injury, which included Claimant experiencing a "pop" in his lower back and developing severe pain in his back, down his legs, and to his toes. Dr. Ivill's positive findings on May 30, 2018,

---

[2] Claimant's testimony can be found at Item 11 of the Certified Record and is summarized in the WCJ's Decision in Finding of Fact 4.

[3] Dr. Ivill's deposition testimony can be found at Item 17 of the Certified Record and is summarized in the WCJ's Decision in Finding of Fact 5.

included decreased ranges of motion in all planes of the lumbosacral spine[,] pain complaints at the end ranges of motion in all planes, objective spasm and trigger points in the bilateral lower thoracic and lumbosacral paraspinal muscles, a straightening of the normal curvature of the lumbar spine, positive straight leg raising signs bilaterally at 40 degrees, decreased reflexes in the bilateral medial hamstrings and bilateral Achilles tendons, and ambulation with antalgic wide based gait.

(*Id.* ¶ 5b.) Dr. Ivill's objective findings on May 30, 2018, included "the spasm and trigger points in the bilateral lower thoracic and lumbosacral spine, the positive straight leg raising sign bilaterally at 40 degrees, and the decreased reflexes at the bilateral Achilles tendon and hamstring tendons." (*Id.* ¶ 5c.) Dr. Ivill's differential diagnoses on May 30, 2018, were post-traumatic lumbosacral spine sprain and strain, though he ruled out lumbar disc herniation and lumbar radiculopathy. Dr. Ivill's diagnoses "from the alleged work injury were post-traumatic lumbosacral spine sprain and strain, L5-S1 disc protrusion-type herniation, bilateral S1 radiculopathies, and chronic pain syndrome . . . ." (*Id.* ¶ 5d.) Dr. Ivill recommended an MRI of Claimant's "lumbar spine and [an] electromyogram (EMG) of [] Claimant's legs, ordered medications and durable medical equipment for [] Claimant," performed acupuncture on Claimant, and "recommended [] Claimant's absence from work for all positions on the basis of [] Claimant's pain and [the] side effects of [] Claimant's [prescribed] medications . . . ." (*Id.* ¶ 5e.) Dr. Ivill never released Claimant to work in any capacity.

The results of the MRI of Claimant's lumbar spine showed what Dr. Ivill opined to be a "disc protrusion[-]type herniation" at the levels of L5-S1, which Dr. Ivill believed could hit the S1 nerve root and cause changes in the reflexes at the Achilles tendon, "a positive straight leg raising sign, and objective palpable spasm

trigger points in the lumber and thoracic paraspinal muscles." (*Id.* ¶ 5f.) Conversely, the interpreting radiologist of the MRI and orthopedist, Christian Fras, M.D., identified the injury as a protrusion rather than a herniation, which "differ on the basis of the presence of a tear in the annual fibers . . . ." (*Id.*) The MRI results "showed no clearly definable abnormalities at [] L1-2, L2-3, L3-4, and L4-5 [levels,] with the exception of some disc bulges toward the left neural foramen[, which were] degenerative at those multiple levels." (*Id.* ¶ 5g.) Dr. Ivill opined that these were not severe degenerative changes but minor aging changes that most likely existed before the alleged injury.

On June 13, 2018, Dr. Ivill performed the EMG on Claimant, which "showed objective findings consistent with bilateral S1 radiculopathies, or specifically sciatica" – "abnormalities in the muscles with innervations of the S1 nerve" – including "peroneus longus, gastric, medial, and extensor digitorum brevis, and the S1 lumbar paraspinals." (*Id.* ¶ 5h.) The findings from the EMG results "were consistent with bilateral S1 radiculopathies and correlated with the physical examination findings of decreased reflexes in the S1 innervated Achilles tendon, positive straight leg raising signs bilaterally, and spasm in the back[,]" and also were consistent "with the MRI finding of L5-S1 protrusion[-]type herniation with its impact on the S1 nerve." (*Id.*) When Dr. Ivill evaluated Claimant on July 20, 2018, Claimant had normal strength in the lower extremities.

Dr. Ivill's last examination of Claimant before his deposition took place on August 9, 2018, at which time "Claimant still had chronic persistent back pain, bilateral lower extremity pain [in] his right hip and left leg, and objective findings of decreased reflexes, positive straight leg raising signs bilaterally, spasm at trigger points in bilateral thoracic lumbosacral paraspinal muscles, [and] ambulation with a

consistent wide-based antalgic gait . . . ." (*Id.* ¶ 5j.) Dr. Ivill's somewhat subjective findings included "decreased range of motion with pain complaints at end ranges of motion." (*Id.*) Dr. Ivill then referred Claimant to Dr. Fras, whose examination findings included back pain with straight leg raising tests bilaterally. Finally, Dr. Ivill opined that "[l]ifting, flexing, and rotating activities increased intradiscal pressures and c[ould] cause a rupture of the annular fibers and a resultant disc protrusion type herniation." (*Id.* ¶ 5*l*.)

### B. Employer's Evidence

Employer presented the October 17, 2018 deposition testimony of Dr. Perry, who testified that he is board certified in orthopedic surgery.[4] He examined Claimant on August 7, 2018, took a history from Claimant regarding the alleged work injury and its subsequent treatment, and reviewed Claimant's medical records and June 21, 2018 testimony. During Dr. Perry's evaluation of Claimant, "Claimant was alert and oriented [with] a normal affect[.]" (*Id.* ¶ 6b.) Dr. Perry did not observe any evidence of pain or behaviors evincing pain with regard to Claimant's rendition of the history or while Claimant was in a sedentary posture, despite "Claimant's complaints of pain [while in] a sedentary posture[.]" (*Id.*) He determined that Claimant demonstrated a normal 90 degrees for lumbar flexion, "a normal 30 degrees for lumbar extension," "a normal 40 degrees bilaterally for the lateral bending maneuvers to the right and left[,]" a normal 50 degrees for thoracolumbar rotation to the right and left, and that "the supine straight leg, bent leg, hip rotation, and hip quality of motion test results were bilaterally painless." (*Id.*) "Claimant had no lower extremity muscle atrophy" but "reported tenderness with Dr. Perry's palpation

---

[4] Dr. Perry's deposition testimony can be found at Item 21 of the Certified Record and is summarized in the WCJ's Decision in Finding of Fact 6.

of the mid-line at the level of L5[.]" (*Id.* ¶ 6c.) Claimant's reflexes were fine, and there was no hyperreflexia or anything to suggest "an ongoing condition in the upper motor neuron area[.]" (*Id.*) Claimant had "excellent muscle strength and resistance test results during the motor examination[.]" (*Id.*) Dr. Perry found "no lower extremity muscle atrophy in negation of a nerve injury or disuse" and that "the sitting root test result confirmed the painless supine straight leg raising test." (*Id.*)

Dr. Perry opined that no objective findings in his physical examination supported "Claimant's ongoing subjective complaints of pain." (*Id.* ¶ 6d.) Claimant's reported tenderness in the mid-line at the level of L5 was a subjective finding, but "the negative result for the straight leg raising test" indicated a "lack of a[ny] mechanical or inflammatory condition[s] between the levels of L4 and S1" and any resulting pain. (*Id.*) Claimant also "made a complaint of leg pains below the knee" but had no leg pain while performing the straight leg raise, which is "a strong indicator of the lack of an inflammatory, infectious, or mechanical derangement from the levels of L4 to S1." (*Id.* ¶ 6e.) Overall, "Claimant's examination was objectively normal." (*Id.* ¶ 6f.)

Dr. Perry found the MRI results of Claimant's lumbar spine to be "indicative of degenerative changes at the[] L5-S1 [levels] and [otherwise] normal discs" and that this degeneration and "the non-compressive[,] shallow, desiccated disc protrusion" had no relationship to the alleged work injury but, rather, to the aging process. (*Id.* ¶ 6g.) Dr. Perry determined that the EMG report did not show any raw data for a diagnosis of radiculopathy, and he did not see any abnormality on the EMG report. In Dr. Perry's opinion, "Claimant had no clinical evidence of a significant abnormality[,]" and nothing with regard to "the physical examination supported a diagnosis of left, right, or bilateral radiculopathy." (*Id.* ¶ 6h.)

7

Dr. Perry's impression was that, despite Claimant's reports of back pain, there was "no objective validation of a musculoskeletal[,] traumatically-induced condition." (*Id.* ¶ 6i.) While a sprain or strain was plausible, Dr. Perry opined, there was no evidence of a structural change indicative of an ongoing disability. Dr. Perry could not diagnose Claimant with a work-related sprain or strain, but on cross-examination, he did not dispute the April 30, 2018 diagnosis from the providers at Healthplex of a lower back strain or sprain. Dr. Perry also could not confirm that Claimant had a herniation or radiculopathies because he testified that the EMG report was incomplete and did not confirm these diagnoses by Dr. Ivill. Finally, Dr. Perry determined that "Claimant made a recovery from some type of sprain and strain by" the time of the August 7, 2018 examination and that Claimant can perform work. (*Id.* ¶ 6*l*-m.)

### C. WCJ Decision

In the January 8, 2019 Decision, the WCJ made the following credibility determinations. With respect to Claimant's testimony, the WCJ found Claimant credible regarding the occurrence of the work injury on the basis of his demeanor during his testimony at the hearing. (FOF ¶ 8.)

Regarding the expert medical testimony, the WCJ found Dr. Ivill's testimony regarding the diagnoses of lumbar sprain and strain to be credible and persuasive because those diagnoses are supported by the Healthplex providers, and there was no dispute of these diagnoses by Dr. Perry. (*Id.* ¶ 9.) Further, the WCJ found Dr. Ivill's statements with respect to Claimant's initial lack of capacity to perform his pre-injury job to be credible and persuasive because they are supported by the Emergency Room providers, to which there was no objection from Dr. Perry, and

8

because no evidence in the record repudiated Claimant's inability to perform his pre-injury job before August 7, 2018. (*Id.*)

However, as to Claimant's ongoing disability, the WCJ found Dr. Perry to be more credible and persuasive than Dr. Ivill based on the following:

> 1.) Dr. Perry, as a board[-]certified orthopedic surgeon, has better credentials for the determination of the diagnosis, causation, and status of alleged work injuries as those of [] Claimant than Dr. Ivill, with a board certification in physical medicine and rehabilitation[];
>
> 2.) [t]he statements in the report about [] Claimant's MRI of the lumbar spine and by the interpreting radiologist support Dr. Perry's opinions;
>
> 3.) [t]he clinical examination results during Dr. Perry's evaluation of [] Claimant support Dr. Perry's opinions;
>
> 4.) Dr. Perry gave rational explanations in support of his opinions;
>
> 5.) [] Claimant's testimony about his symptoms, specifically testimony about pain in [the] sides of [] Claimant's legs and no testimony about pain in his feet, did[ no]t support Dr. Ivill's testimony about the sites of [] Claimant's symptoms;
>
> 6.) [] Claimant's testimony about the actual work injury, specifically testimony about a sharp spike in [] Claimant's right hip and end of his spine, did[ no]t support Dr. Ivill's testimony about the actual work injury, specifically testimony about a "pop" in [] Claimant's back; and
>
> 7.) Dr. Perry's examination of [] Claimant was more comprehensive than Dr. Ivill's evaluations of [] Claimant with Dr. Perry's tests of [] Claimant's sensation, motor strength, and resistance, among others, in contrast to the lack of the performance of those tests by Dr. Ivill.

(*Id.* ¶ 9.)

Based on these credibility determinations, the WCJ found that Employer was liable for the payments of workers' compensation benefits to Claimant for total disability for the period from April 20, 2018, the date that Claimant received a

9

diagnosis from the Emergency Room and was removed from work, to August 7, 2018, the date that Dr. Perry found Claimant to have fully recovered. (WCJ Decision, Conclusions of Law ¶ 4.) The WCJ also found Employer liable for expenses for Claimant's reasonable and necessary medical treatment with regard to Claimant's work injury during that time period. (*Id.*) Accordingly, the WCJ granted the Claim Petition for that closed period.

### *D. Administrative Appeal*

On January 28, 2019, Claimant filed a pro se administrative appeal to the Board. (C.R., Items 6, 7.) In his three-page appeal narrative, Claimant asserted numerous reasons for reversing the WCJ's determination. He argued that Employer did not provide him with his right to medical care after the accident by not taking him to a doctor, providing a list of approved doctors or where to get treatment unless he physically came into the office, or filling his prescriptions. (C.R., Item 7.) Claimant posited that his benefits should have started on April 19, 2018, the date Employer stopped paying him, and that he only waited until April 20 to receive treatment because of Employer's repeated refusal to provide him medical care and insistence that he work on April 18.

Next, Claimant alleged that Dr. Perry's determination that Claimant was fully recovered from the injury on August 7, 2018, was false as Claimant still had pain in the affected areas. Claimant contended that Dr. Perry omitted from his report and testimony that Claimant had specific complaints of pain during the IME, which were allegedly documented by Claimant's wife, and that Dr. Perry's testimony was inconsistent with itself and with Dr. Ivill's testimony that Claimant was not fully recovered. Further, Claimant asserted that Dr. Perry's opinion that Claimant's disc

10

protrusion was due to age was in error because Claimant's pain did not increase gradually.

Claimant also alleged claims regarding Counsel's performance at the hearing before the WCJ. Claimant averred that Counsel made the decision for him to speak through a translator, though he claimed he did not need one. Claimant asserted that he was, therefore, "not able to convey my own thoughts exactly because my messages were going through another person." (*Id*.) Additionally, Claimant alleged that Counsel did not instruct him prior to the meeting as to what questions he would be asked and, as a result, Claimant did not have the opportunity to provide testimony as to the total force he was exerting when the work injury occurred. Claimant also averred that Counsel did not confront Dr. Perry regarding what Claimant perceived as Dr. Perry's erroneous claims, such as Dr. Perry's claim of the painless supine test, during Dr. Perry's deposition. With regard to Dr. Perry's IME, Claimant also argued that Counsel did not call his wife as a witness who was present with Claimant during the IME and would have testified that Claimant made a complaint of pain during the IME to rebut Dr. Perry's opinion that Claimant had fully recovered. Finally, Claimant sent Counsel documents surrounding his treatment and injury that, Claimant averred, Counsel did not submit.

Claimant last argued that Employer should have been required to pay for his medical bills up to at least the WCJ Decision, if not a bit longer. Claimant maintained that he had no choice but to use private medical providers, because Employer refused to provide him with physicians he could use or a claim number to give to a physician. Thus, according to Claimant, Employer created this situation and he had no other option.

11

*E. Board Opinion*

The Board affirmed the WCJ's findings and Decision. With regard to Claimant's arguments about Dr. Perry's testimony being incorrect, which the Board characterized as a challenge to the WCJ's credibility determinations, the Board held that because "[t]he WCJ has complete authority over questions of credibility, conflicting medical evidence[,] and evidentiary weight," it could not review those determinations, as they were supported by substantial evidence of record. (Board Opinion (Op.) at 6 (quoting *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth. 1995)).) The Board found that the WCJ's crediting of Dr. Ivill's diagnoses with regard to Claimant's lumbar strain and sprain and to the disability beginning April 20, 2018, were supported by substantial evidence in the record based on the consistency between Dr. Ivill's diagnosis and the Emergency Room physician's diagnosis, and that Dr. Perry did not dispute these diagnoses. The Board also recognized that the WCJ rejected Dr. Ivill's testimony with regard to Claimant's additional complaints of pain in favor of Dr. Perry's contrary opinions because of, among other reasons, Dr Perry's credentials, his opinion's consistency with the MRI report, and the nature of Dr. Perry's examination in comparison with Dr. Ivill's examination. Accordingly, the Board affirmed the WCJ's findings concerning the work injury and disability, which supported the award of benefits for a closed period.

As to Claimant's claim of ineffective assistance of counsel, the Board analyzed the issue under the standard set forth in *Bickel v. Workmen's Compensation Appeal Board (Williamsport Sanitary Authority)*, 538 A.2d 661 (Pa. Cmwlth. 1988). Comparing the claims here with those found so egregious in *Bickel* that a remand and rehearing were required, the Board concluded that "Claimant's allegation of

12

ineffective counsel falls well short of the conduct in *Bickel*." (Board Op. at 6.) Accordingly, the Board found that "the decisions of Claimant's former counsel were [not] negligent [but] strategic . . . ." (*Id.*)

To the extent that Claimant argued that Counsel did not properly cross-examine Dr. Perry regarding his diagnosis of a full recovery on August 7, 2018, thereby hurting Claimant's case, the Board, again, treated this as a credibility issue and held there was no error because "the evidence found credible by the WCJ support[ed] a grant of benefits for a closed period only . . . ." (*Id.*) The Board also addressed Claimant's challenge to the translation services, finding that its "review of the transcript reveals no discussion of difficulty with translation." (*Id.* at 6 n.2.) Finally, as for the assertion that Claimant's benefits should have begun on April 19, 2018, the Board held that "[w]here the connection between a work-related injury and ongoing disability is not obvious, medical evidence is required[;]" therefore, the award of benefits here starting on the date of treatment at the Emergency Room on April 20, 2018, which was the basis for finding Dr. Ivill's testimony regarding disability as of that date credible, was not in error. (*Id.* at 7 (citing *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677 (Pa. Cmwlth. 1991)).) Claimant now petitions this Court for review.[5]

## II. DISCUSSION

Claimant raises multiple issues for this Court's review. First, Claimant challenges the WCJ's and the Board's determinations surrounding his award of benefits for a closed period from April 20, 2018, to August 7, 2018. Second,

---

[5] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

13

Claimant argues that his Counsel provided ineffective assistance before the WCJ that prejudiced his case. Third, Claimant challenges the translation services he received at the WCJ hearing and the transcript thereof. Fourth, Claimant avers that he was not served in the underlying litigation before the WCJ. We review these issues in turn.

*A. Challenges to the WCJ's and the Board's Determinations*
*1. Parties' Arguments*

Claimant first argues that the WCJ's award of benefits for a closed period of April 20, 2018, to August 7, 2018, was in error. Claimant asserts that the benefits award should include April 19, 2018, the day after he received his final payment from Employer, because the reason he did not receive medical care until April 20 stemmed from Employer's refusal to provide him with a list of approved doctors, citing emails between him and Employer, which are incorporated into his brief. Claimant argues that, on April 18, 2018, "[E]mployer lured [him] to go to the workplace after [he] was injured, gave [him] Ibuprofen[,] and ordered [him] to work . . . , and that [this] exacerbated [his] injury." (Claimant's Brief (Br.) at 12.) Claimant asserts that when he refused to go to work, Employer refused to give him a list of approved doctors and then informed him that Employer was not in possession of any such list. Additionally, citing the notes he and his wife took during the IME and his own recollection of the same, Claimant challenges the WCJ's decision to accept, and the reasons proffered to accept, Dr. Perry's opinions instead of those of Dr. Ivill. Claimant argues that the WCJ's crediting of Dr. Perry's determination that he was healed from his injury on August 7, 2018, was erroneous and that he should be awarded benefits up to the time of the WCJ Decision.

In response, Employer argues that the WCJ "properly determined that []
Claimant sustained a work-related injury from which he fully recovered[,]" and,
therefore, the Board "correctly affirmed the [WCJ's] Order granting the Claim
Petition for a closed period." (Employer's Br. at 16.) Employer further argues that
Claimant misconstrues this Court's review, as this Court may only consider whether
the WCJ's "findings are supported by substantial evidence," and, therefore, "it is
irrelevant that the record reveals evidence that would support a contrary finding."
(*Id*. at 18.) Because "[t]here is clearly substantial, competent evidence in the record,
in particular, the credited testimony of [] Claimant and Dr. Perry," which the WCJ
relied on in finding that Claimant suffered only a work-related lumbar sprain and
strain from which Claimant was recovered, Employer argues that this Court should
affirm. (*Id.*)

With respect to Claimant's argument that the WCJ erred by not awarding him
benefits starting on April 19, 2018, Employer submits that the WCJ properly
awarded benefits as of April 20, 2018, because that is the date Claimant first
established the existence of a disability: when he received treatment from the
Emergency Room. Because the WCJ credited Dr. Ivill's diagnoses, which were
consistent with the Emergency Room physician's statements and imposition of work
restrictions, thereby removing Claimant from work, the WCJ's determination that
the disability began on April 20, 2018, Employer posits, is supported by substantial
evidence and should be affirmed.

As to the WCJ's granting of medical benefits for a closed period, Employer
argues that the Board properly affirmed the WCJ's determination that Claimant
failed to show that his medical expenses incurred after the August 7, 2018 IME were
causally connected to the work-related injury. Because Claimant brought a Claim

15

Petition in which he had the burden to prove all elements of his claim, and as the WCJ's findings are supported by competent, substantial evidence, through Dr. Perry's testimony, Employer submits that the Board properly affirmed the award of benefits for a closed period ending August 7, 2018. Additionally, relying on *Mashuda Corporation v. Workers' Compensation Appeal Board (Ferrari)*, 706 A.2d 374, 376 (Pa. Cmwlth. 1998), which states that "there is no reason to require the employer to pay the claimant benefits up until the date of the WCJ's decision when the claimant files a claim petition and the WCJ establishes liability for a closed period[,]" Employer asserts that it had no obligation to pay for medical expenses incurred by Claimant after August 7, 2018, and, therefore, there was no error in the WCJ's failing to require payment beyond that period. (Employer's Br. at 23-24.) Finally, Employer contends that Claimant included numerous documents in his brief that were never submitted to the WCJ, which this Court may not consider on appeal under *Watson v. Pennsylvania Department of Corrections*, 990 A.2d 164, 167 (Pa. Cmwlth. 2010), and *Barran v. State Board of Medicine*, 670 A.2d 765, 700 n.6 (Pa. Cmwlth. 1996).

### 2. Analysis

As an initial matter, Claimant raises a litany of factual points and includes portions of numerous documents in his brief that are not in the record certified to this Court. To the extent Claimant's brief sets forth facts for the first time or includes information or documents that were not presented to the WCJ, and, therefore, are not in the certified record, we may not consider them. Our review is constrained to the facts of record. *Sanders v. Workers' Comp. Appeal Bd. (Marriott Corp.)*, 756 A.2d 129, 133 (Pa. Cmwlth. 2000) (explaining that briefs are not part of the record and that this Court may not consider facts outside of the record).

As to the merits of the issues Claimant preserved for our review, it is well-settled that "in a claim [petition] proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award." *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Thus, a claimant must show (1) the existence of an injury and disability and (2) a causal connection between the injury and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). A disability is the loss of earning power resulting from a work incident. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). Where the causal relationship between the work incident and the injury is not obvious, unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Comp. Appeal Bd. (City of Phila.)*, 116 A.3d 140, 144-45 (Pa. Cmwlth. 2015). An employer is not responsible for paying benefits for disability up until the date of decision where the claimant files a claim petition and a WCJ grants benefits for a closed period. *Mashuda Corp.*, 706 A.2d at 376 ("Once [the] claimant's disability has terminated, [the] employer is no longer responsible for paying benefits.").

When analyzing a substantial evidence challenge, this Court "consider[s] the evidence as a whole, view[s] the evidence in a light most favorable to the party [that] prevailed before the WCJ, and draw[s] all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (en banc) (internal quotation marks omitted). "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth.

17

2002). "In cases such as the present one, where the Board has taken no additional testimony, the Board is required to accept the facts found by the [WCJ] if they are supported by competent[, substantial] evidence." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992) (internal quotations omitted). "[T]he Board or reviewing court must simply determine whether, upon consideration of the evidence as a whole, the [WCJ's] findings have the requisite measure of support in the record." *Id.* Our Supreme Court has explained that, in light of this Court's limited review, "findings of fact will be overturned only if they are arbitrary and capricious." *Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Shinsky)*, 421 A.2d 1060, 1062-63 (Pa. 1980).

Applying these principles, we must determine whether the WCJ's findings are adequately supported by the evidence in the record, such that the Board did not err in affirming the WCJ's award of benefits for the closed period from April 20, 2018, to August 7, 2018. The WCJ here found Claimant's testimony to be "credible about the occurrence of the work injury on the basis of his demeanor during his testimony before the" WCJ. (FOF ¶ 8; Board Op. at 6.) The WCJ also credited Dr. Ivill's diagnoses of a lumbar strain and sprain, which started on April 20, 2018, as those diagnoses were consistent with the records of the Emergency Room and Healthplex, and Dr. Perry did not dispute the existence of a lumbar strain and sprain. (FOF ¶ 9; Board Op. at 7.) The WCJ rejected the rest of Dr. Ivill's testimony and did not grant benefits for the date of April 19, 2018. The Board affirmed this decision because "[w]here the connection between a work-related injury and ongoing disability is not obvious, [unequivocal] medical evidence is required[,]" and the only medical evidence of record as to the first onset of Claimant's disability stemmed from the

18

Emergency Room records on April 20, 2018. (Board Op. at 7 (citing *Cromie*, 600 A.2d 677).)

Our review of the record is consistent with the Board's determination. Claimant brought a Claim Petition in which he had "the burden of establishing a right to compensation and of proving all necessary elements to support an award." *Inglis House*, 634 A.2d at 595. This required Claimant to present unequivocal, credited medical evidence showing the existence of the injury, and Claimant's disability therefrom, as of April 19, 2018, and that he had not recovered from his injuries. *Roundtree*, 116 A.3d at 144-45. Claimant avers that he should have been awarded benefits for April 19, 2018, because Employer's conduct caused him to delay receiving medical treatment until the following day. However, there is no medical evidence in the record showing the existence of his disability on April 19. We are limited to reviewing whether the WCJ's findings were supported by competent, substantial evidence of record and are bound by those findings if supported. There being no medical evidence proving Claimant's disability as of April 19, the Board did not err in affirming the WCJ's finding and decision to award benefits beginning on April 20.

Claimant also argues that his benefits should have continued until the WCJ issued its Decision. However, the WCJ credited Dr. Perry's opinion that Claimant had fully recovered by August 7, 2018, based on Dr. Perry's credentials, his comprehensive examination of Claimant, and his explanations for his opinion. The WCJ rejected Claimant's testimony of ongoing pain in his legs and feet as not consistent with Dr. Perry's opinion.

Accordingly, because "credibility is solely an issue for the finder of fact," and as the WCJ's findings are "adequately supported by the evidence as a whole,"

19

*Republic Steel Corp.*, 421 A.2d at 1062-63, we conclude that there was no error in the WCJ holding that Claimant suffered a work-related injury in the form a lumbar sprain and strain for the closed period beginning on April 20, 2018, and ending on August 7, 2018. Based on a review of the record as a whole, it cannot be said that this decision was arbitrary or capricious. Accordingly, the Board properly affirmed the award of benefits for the closed period.

### B. Challenge to the Effectiveness of Counsel

#### 1. Parties' Arguments

Claimant raises multiple claims with regard to Counsel's performance in these proceedings. First, Claimant argues that Counsel provided inadequate representation by withholding evidence for non-strategic reasons. Claimant asserts that Dr. Perry erred because Claimant reported a "pain of 7 (on a scale of 0-10)," but Dr. Perry's medical report and deposition stated that Claimant reported no pain. (Claimant's Br. at 28.) Claimant argues that "[Counsel] knew that fact a long time before Dr. Perry's deposition and did not bring it to light[,]" that the WCJ "was never told that information[,]" and that "[Counsel] made it appear to the [WCJ] that both sides did not dispute" Dr. Perry's testimony regarding Claimant not having pain on August 7, 2018. (*Id*. at 28-29 (emphasis omitted).) Further, Claimant submits that Counsel did not call Claimant's wife, who was present during Dr. Perry's IME and took notes as to what occurred, what was said, and how long the IME took, which was only four minutes. Because Counsel did not question Dr. Perry about Claimant's report of pain or the four-minute examination, Claimant contends he was prejudiced because the WCJ determined that "Dr. Perry's examination [] was more comprehensive than Dr. Ivill's . . . ." (*Id*. at 30 (quoting FOF ¶ 9).) Claimant further avers that Counsel did not adequately challenge alleged contradictions in Dr. Perry's

deposition, which further prejudiced his case. Counsel did not present evidence and information that "would have supported the diagnosis of [a] herniated disc pushing on the nerve, leading to pain in the lower extremities," Claimant argues, but limited the case to a presentation on the back strain and sprain. (*Id*. at 38.)

Further, Claimant submits that Counsel failed to submit the following: (1) email threads showing that Employer refused to provide him with medical care; (2) an incident report showing that it was a combination of the weight of the hose he was working on and the force of applying the valve that more accurately depicted the cause of the injury and that he did not receive medical attention afterwards; and (3) a challenge to Employer's counsel's objection to the introduction of pictures of a hose and nozzle that were like the type that injured Claimant. (*Id*. at 42.) Claimant also avers that Counsel did not submit the proper EMG records to the WCJ, leading to the finding that the records were not complete. Finally, Claimant argues that "[Counsel] did not correct [the] hearing transcript when the court reporter omitted the part at which the WCJ prevented [him] from talking and forced [him] to talk through the [translator] . . . ." (*Id*. at 43.) In light of this, Claimant argues, the Board's determination that Counsel's actions may have been for strategic reasons is "ridiculous," as "[t]here is no strategic benefit to leaving the untrue[,] damaging accusations . . . unchallenged." (*Id.* at 51-52.)

Employer responds that Claimant's claim of ineffective counsel should fail under *Bickel* and *Martell v. Workers' Compensation Appeal Board (Doyle Equipment)*, 707 A.2d 242 (Pa. Cmwlth. 1998). Under these cases, Employer argues that "only in . . . extraordinary circumstances may the Board be found to have abused its discretion in denying rehearing for the presentation of [] evidence." (Employer's Br. at 14 (quoting *Martell*, 707 A.2d at 244).) In order for a claim to sound for

21

ineffective assistance of counsel stemming from an administrative hearing, Employer asserts there must be an "egregious case" involving the total failure to present the necessary evidence for a claimant. (*Id.* at 13-14.) Here, Employer argues that "there is no substantiated evidence that Claimant's [C]ounsel engaged in any improper conduct . . . ." (*Id.* at 14-15.) Thus, Employer submits that the Board correctly determined that Claimant was merely dissatisfied with his former counsel's performance and that his "allegation . . . falls well short of the conduct in *Bickel*." (*Id.* at 14-15 (quoting Board Op. at 6).) Employer maintains that "the Board has broad discretion to order rehearing where the interests of justice so require," but that this does not "mandate rehearing every time a losing party can point to some evidence which his attorney did not introduce." (*Id.* at 15 (quoting *Martell*, 707 A.2d at 244).) Accordingly, Employer submits that it properly denied Claimant's appeal based upon his claim of ineffective counsel.

### 2. Analysis

When considering a challenge to the effectiveness of counsel, which is considered a rehearing issue, "[t]he decision of whether to grant a rehearing is a matter of discretion for the Board." *Bickel*, 538 A.2d at 663 (citing *Hawkey v. Workmen's Comp. Appeal Bd.*, 425 A.2d 40 (Pa. Cmwlth. 1981)). This Court's "scope of review in such cases is limited to a determination of whether the Board has abused [its] discretion." *Id.* This Court has consistently held that "[t]he substantive due process right to effective assistance of counsel has never been extended to civil or administrative proceedings" when considering such claims in regard to workers' compensation and unemployment compensation proceedings. *Johnson v. Workmen's Comp. Appeal Bd.*, 321 A.2d 728, 730 (Pa. Cmwlth. 1974); *see, e.g.*, *Grimes v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 834 C.D.

2014, May 14, 2015), slip op. at 7 n.6;[6] *Gottardy v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1493 C.D. 2014, filed Feb. 20, 2015), slip op. at 8 n.2; *Kussie v. Workers' Comp. Appeal Bd. (Yoder Bros.)* (Pa. Cmwlth., No. 1700 C.D. 2012, filed June 11, 2013), slip op. at 5 n.3; *Mitchell v. Workmen's Comp. Appeal Bd. (Neal Tree Serv.)*, 565 A.2d 224, 225 (Pa. Cmwlth. 1989). Further, in *Johnson*, this Court discussed the grounds for rehearing under Section 426 of the Workers' Compensation Act,[7] 77 P.S. § 871, explaining that "merely misjudg[ing] the weight [the WCJ] would give to the evidence . . . does not amount to incompetence even under the standard applicable in criminal cases." 321 A.2d at 730.

However, we have carved out an exception to that rule where counsel completely fails to bring forward any medical evidence to support the claimant's case, such evidence was available, and there exists no reasonable explanation for counsel's conduct. *Bickel*, 538 A.2d at 663. In *Bickel*, we explained that the circumstances of the case were such that

> [t]he [WCJ], opposing counsel[,] and [the claimant] all expected [the claimant's] counsel to present medical testimony[, and the claimant's counsel] repeatedly stated that he would do so. Of course, [the claimant's] counsel never did present this testimony, and no reason for his failure appears in the record before us. Reviewing the record of [the claimant's] pro se appeal to the Board, it appears that this situation came as a surprise to [the claimant] and that he discharged his counsel for that reason. It is quite apparent that the presentation of this evidence was [the claimant's] only means of medical proof of his injury, his disability[,] and the causal connection between his work-related injury and his disability.

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported opinions are not binding precedent, but may be cited for their persuasive value.

[7] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 6 of the Act of June 26, 1919, P.L. 642, 77 P.S. § 871.

*Id.* This Court distinguished the situation in *Bickel* from that in *Johnson*, as *Johnson* involved the claimant's counsel's decision to submit the depositions and reports of the treating physicians rather than their live testimony. Accordingly, because this Court in *Bickel* could not discern any "reasonable explanation for counsel's actions[,]" we remanded the matter to the Board so that the claimant could have the "opportunity to show that medical evidence was available which was not presented due to his counsel's negligence." *Id.*

We examined the boundaries of *Bickel* in *Martell*, 707 A.2d at 244. In *Martell*, the claimant's counsel sought to introduce the medical report of the claimant's treating physician but could not because the claimant had not deposed the physician. After the WCJ provided time to conduct such a deposition, the claimant's counsel notified the WCJ that he had decided not to depose the physician or any other witnesses, and the record was closed. The claimant's counsel later asked to reopen the record to allow for the deposition of the claimant's former physician, to which no response was received, but the WCJ granted the termination petition. The Board affirmed and denied the claimant's rehearing request. In affirming the denial of the rehearing request, we explained that "while the reasons of counsel for not presenting medical evidence have never been explored in the record, under the circumstances of this case, they are as readily explained as strategic decisions [not] as negligence." *Id.* at 244. Regardless, we held that the situation did "not present the kind of apparent manifest injustice that was evident" in *Bickel*, and, accordingly, "only in such extraordinary circumstances [as in *Bickel*] may the Board be found to have abused its discretion in denying rehearing for the presentation of additional evidence." *Id.*

24

From *Johnson*, *Bickel*, and *Martell*, we deduce a rule for claims of ineffective assistance of counsel, which must rise to the level of negligence with regard to counsel's performance. Although counsel's decision to submit only the deposition testimony and medical report of the medical expert in lieu of live testimony, *Johnson*, 321 A.2d at 730, or to not submit evidence for rationally strategic reasons, *Martell*, 707 A.2d at 244, does not amount to negligence, the failure to submit any material medical evidence without any rational explanation does, *Bickel*, 538 A.2d at 663. Therefore, in circumstances in which counsel fails to present any medical evidence and there exists no reasonable explanation for that decision, such that there is no conceivable basis that counsel acted for strategic purposes, the denial of a rehearing by the Board would be improper. Absent such a circumstance, the denial of rehearing will not be overturned by this Court.

In the present case, we cannot say that Claimant's Counsel's performance rises to the level of negligence found in *Bickel*. Unlike in *Bickel*, Counsel did not fail to present evidence in support of Claimant's work-related injury, disability, and the causal connection between them. In fact, not only did Counsel obtain and submit Dr. Ivill's deposition testimony, but the WCJ credited Dr. Ivill's diagnoses in finding that Claimant suffered a work-related injury and awarding Claimant benefits. While Claimant is dissatisfied that Counsel did not ask him certain questions, required him to testify through a translator, did not call his wife as a witness, did not submit certain documents, and did not challenge certain aspects of Dr. Perry's testimony on cross-examination, we agree with Employer that this does not require a rehearing, as our precedent "do[es] not mandate rehearing every time a losing party can point to some evidence which his attorney did not introduce." *Martell*, 707 A.2d at 244. Indeed, Counsel's misjudging of the weight the WCJ might give to such evidence "does not

25

amount to incompetence even under the standard applicable in criminal cases."
*Johnson*, 321 A.2d at 730. Accordingly, the Board's conclusion that Counsel's performance was not so inadequate under our precedent as to warrant a hearing, and its denial of rehearing were not an abuse of discretion.

### C. Challenge to the Translation Services at the WCJ Hearing and the Hearing Transcript

Claimant argues, citing facts not in the record, that the WCJ should not have required him to testify through a translator at the hearing over Claimant's objection that the translator was not needed or wanted, an interaction that is not reflected in the transcript. Claimant submits that the failure to request a correction to the hearing transcript reflects one more way Counsel tried to "ruin" his case, (Claimant's Br. at 12), and this Court should order the record be opened to require the court reporter to supplement the transcript with the audio recording.[8]

Employer responds that this Court should reject this claim for two reasons. "First, Claimant has waived the issue by failing to raise it before the [WCJ]." (Employer's Br. at 18.) "Second, even if not waived, the issue is meritless, since any claimed error in requiring [] Claimant to testify via a[] [translator] . . . was

---

[8] Claimant filed a "Motion to correct the transcript and subpoena witnesses" with this Court to order the court reporter to fix the transcript at the WCJ hearing for the purpose of showing that the WCJ denied his request to not use translator services. In an August 19, 2020 Order, we denied that motion, finding that Claimant "made no attempt to amend the hearing transcript at any time before or after the WCJ's decision was issued or at any time during the pendency of his Appeal to the . . . Board." (Aug. 19, 2020 Order.)

Claimant then filed an Application for Reconsideration of that August 19, 2020 Order, again asking "this Court to order the court reporter to fix the [WCJ hearing] transcript" and to also "release the audio recording of the hearing before the [WCJ]," "disclose all communications with the WCJ's staff or anyone" else who may regard the transcript, and "to order the translator to provide information about what occurred at the hearing[.]" (Sept. 9, 2020 Order.) We denied the Application, explaining that it is "not the role of this appellate court to add to or correct the record . . . ." (*Id.*)

26

harmless." (*Id.*) Employer submits that there is nothing in the transcript showing that Claimant did not want to testify through a translator and Claimant did not raise this claim in his administrative appeal. Moreover, Employer posits that any error must be harmless because the WCJ credited Claimant's testimony as to the occurrence of the work-related injury.

It is well-settled that "[l]egal issues and facts not presented to the [WCJ] cannot be asserted on appeal without sacrificing the integrity, efficiency, and orderly administration of the work[ers'] compensation scheme of redress for work-related injury . . . ." *DeMarco v. Jones & Laughlin Steel Corp.*, 522 A.2d 26, 29 (Pa. 1987). Likewise, "[t]he law is clear that failure to raise an issue on appeal to the Board constitutes a waiver of the issue." *Edwin L. Heim Co. v. Workmen's Comp. Appeal Bd. (Reever)*, 663 A.2d 290, 292 (Pa. Cmwlth. 1995). Accordingly, where a claimant does not raise an issue that was available at the time before the WCJ and also does not raise the issue before the Board, that issue is waived.

In the present case, the record does not reflect that Claimant raised the issue he is currently arguing before the WCJ or before the Board. Acknowledging that Claimant believes the hearing transcript is incomplete, there is nothing in the transcript reflecting that Claimant had issues with or objected to how the translator was translating Claimant's testimony. As for Claimant's appeal to the Board, Claimant only mentioned in his appeal that Counsel "want[ed him] to have a translator although [he] said [he] did not need it." (Claimant's Appeal Narrative to the Board, C.R., Item 7.) Accordingly, the issue has not been properly preserved for this Court's review and is waived.

27

*D. Challenge to Service*

Finally, Claimant argues that he "was not officially served with a copy of anything that was submitted to the [WCJ] in my case by either lawyer, although both lawyers sent other letters to my address." (Claimant's Br. at 67.) In response, Employer argues that this claim should be rejected either as being waived for not being raised before the WCJ or as being without merit because Claimant was represented by Counsel, who, as Claimant's agent, was served with all of the required documents and participated in the WCJ's hearings. (Employer's Br. at 25.)

As explained above, legal issues not presented before the WCJ are waived and cannot be reviewed by this Court. *DeMarco*, 522 A.2d at 29; *Edwin L. Heim Co.*, 663 A.2d at 292. In the present case, the record shows that Claimant did not raise the issue of service before the WCJ.[9] Accordingly, this issue is also waived and cannot be reviewed by this Court.

## III. CONCLUSION

While we understand that Claimant is disappointed with the outcome of his case, we are bound by legal precedent and the record certified to us. Accordingly, we conclude that the Board did not err in holding that the WCJ's findings were supported by competent, substantial evidence in the record, which, in turn, supported the grant of benefits for a closed period beginning April 20, 2018, and ending on August 7, 2018, and that Counsel's representation was not inadequate under this Court's precedent that the Board's decision not to grant a rehearing was an abuse of

---

[9] We note that, although Claimant argues he should have been served in addition to Counsel, he does not provide any support for the proposition that service on Counsel alone was insufficient or prejudicial.

discretion. Further, because Claimant's challenges to the translator services at the WCJ hearing and as to service are waived, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hatem Saied, :
      Petitioner :
         :
    v. : No. 426 C.D. 2020
         :
Workers' Compensation Appeal :
Board (Menzies Aviation Group :
(USA), Inc.), :
      Respondent :

## **O R D E R**

  **NOW**, May 26, 2021, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

                     _____

                     **RENÉE COHN JUBELIRER,** Judge